UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANDREW LEISE,
      Plaintiff,

v.                                                     Civil Case No.: 2:22-cv-9

VERMONT HUMAN RIGHTS COMMISSION;
KEVIN CHRISTIE; BOR YANG;
DA CAPO PUBLISHING, INC.;
JOHN AND JANE DOE I-X
      Defendants.

## PLAINTIFF'S MOTION FOR RECUSAL

NOW COMES plaintiff, Andrew Leise, by and through his attorneys, Cleary, Shahi & Aicher, P.C., and pursuant to 28 U.S.C. §445 respectfully moves for recusal of Honorable William K. Sessions, III. This motion is based on the following memorandum and supporting affidavit.

## MEMORANDUM IN SUPPORT

### A.   Background

This suit is for the violation of plaintiff's constitutional rights and related claims. Defendant Vermont Human Rights Commission ("HRC") in November 2020 generated an investigative report ("Investigative Report") regarding the complaint of Dr. Lydia Clemmons against the Vermont State Police ("VSP") and Vermont Department of Public Safety ("DPS") under Vermont's Fair Housing and Public Accommodations Act (FHPA). The complaint related to the friction between Dr. Clemmons and her tenant in the Fall of 2017. (The "Tenant"). Dr. Clemmons claimed that because of her race and gender, VSP was not sufficiently aggressive with the Tenant who was also in a protected class as a

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

Hispanic man. After nearly three years of investigation, the HRC investigator issued a report in July 2017 that the evidence did *not* support a finding of discrimination. However, by November 2017 the Investigative Report was manipulated to falsely conclude that VSP and its troopers, including plaintiff, had discriminated against Dr. Clemmons. A final determination by HRC was issued on March 25, 2021, that there was reasonable grounds to believe VSP and DPS had discriminated against Dr. Clemmons on the basis of race and gender.

On June 10, 2021, the Investigative Report, confidential by statute, was unlawfully released by defendant Bor Yang, the executive director of HRC, to defendant Da Capo Publishing, Inc. ("Seven Days") in exchange for favorable media coverage. The names of individual troopers, including plaintiff were not redacted in the Investigative Report released by defendant Yang. The individual troopers were not parties to the matter before HRC.

On June 23, 2021, defendant Seven Days published an article that HRC had found the state police had discriminated against a black woman. The article was entitled: "Vermont State Police Discriminated Against Black Woman Who Runs Clemmons Family Farm, Commission Says." (The "Leise Article" Ex 1). Seven Days went beyond just reporting on HRC's determination that would have been limited to the identity of the Respondents as VSP and DPS. It singled out plaintiff by name as the only trooper profiled to falsely describe him as a racist. The 109-page Investigative Report had covered the involvement of some 20 troopers of various ranks, 65 calls to VSP, and 18 VSP incidents, but Seven Days decided to use plaintiff as the poster boy for the story with its own false

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

2

characterization of plaintiff's encounter with Dr. Clemmons in October 2017 as "[o]ne incident of particular note . . . ." *Id.* And that encounter was covered in a way to enhance the falsehoods against plaintiff and to further damage his name. A public label of "racist" is highly damaging to anyone, let alone a law enforcement officer.

Plaintiff has asserted a number of causes of action against the defendants including due process violations and common law torts. On February 14, 2022, defendant Da Capo filed a motion to dismiss, a motion to strike under Vermont's Anti-SLAPP statute, a request for judicial notice and related exhibits. (Docs. 12 et seq.). The case was assigned to Judge Sessions. Plaintiff will be submitting oppositions to defendant Da Capo's filings. The remaining defendants have an extension to April 1, 2022, to respond to the complaint.

### B. The Seven Days Article that Accused Judge Sessions' Spouse of Racism

Judge Sessions' spouse, Abi Sessions, was the victim of the same type of public humiliation, "tar and feathering" technique used by Seven Days to accuse others of racism. On May 4, 2011, Seven Days published an article with a large photo of Abi Sessions on the first page. (The "Sessions Article" Ex 2). The article was entitled: "In Burlington, a Racially Charged Investigation Raises Questions About a Principal's Departure." *Id.*

The Sessions Article started by noting that after a long career in education, Abi Sessions "[w]as lured back in 2009 to helm the country's first elementary school with a sustainability theme." *Id.* The Sessions Article added that at the start of the academic year (presumably Fall 2010), Ms. Sessions had described her position of principal at the school as a "dream job." *Id.*

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

After setting up Ms. Sessions as fully committed to a dream job, Seven Days then went to work to construct a story that portrayed her departure as a result of accusation of racism. Seven Days noted that Ms. Sessions' decision to call "it quits" "coincides" with "an ongoing investigation" of an allegation of racism by an African American mother about the manner in which her son was treated by the school. *Id.* The Human Rights Commission was mentioned as one of the recipients of the complaint of racism, and was reported to be "on the case." *Id.*

Seven Days quoted Ms. Sessions as stating that her decision to leave "[w]as 'personal' and 'totally voluntary,' and entirely unrelated to that incident or the ensuing fallout." *Id.* Seven Days quoted a sustainability coach as praising Abi Sessions' commitment to diversity. *Id.* However, then literally came the "but" in the story. Seven Days noted that Ms. Sessions was involved with "the process of dealing with" the parent's complaint about her son's treatment. *Id.* After two meetings with "school officials," the complaining parent felt alienated and disrespected. Seven Days detailed the parent's allegation that during these meetings the "three school staff continuously gave each other coded looks . . ." and "essentially presented" her son as having lied. *Id.* The "school officials" were not identified.

Seven Days referred to a City Councilor's comment that the complaining parent had felt there was racism and she should have been given the benefit of doubt instead of attempts to "poke holes in her story." *Id.* Seven Days quoted the Burlington School Superintendent for stating that she took the allegation of racial discrimination "very seriously" and the District was providing "significant training" to all schools, and

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

4

"[p]articularly at the Sustainability School–around issues of 'cultural competence' and school policies that might be discriminatory." *Id.* Seven Days concluded the article with the following:

> For her part, Sessions described the incident with Tyler's son as "an upsetting event for everyone in the community," but would not discuss it further because it remains under review. Sessions, who maintains a home in Cornwall with her husband, U.S. District Court Judge William K. Sessions III, says she's retiring for good this time.

*Id.*

### C. Judge Sessions Cannot be Impartial in Addressing the Evidence of the Seven Days Sessions' Article

28 U.S.C. §445 provides in relevant part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . .

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

. . . .

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

The standard for recusal under section 445(a) is "whether a reasonable person, knowing and understanding all the relevant facts, would conclude that the judge's impartiality might reasonably be questioned," *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988), *cert. denied* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). As this Court put it:

> Section 455(a) requires recusal where the judge's "impartiality might reasonably be questioned." That provision "sets out an objective standard for recusal, creating the so-called 'appearance of justice' rule." *DeLuca v. Long Island Lighting Co.*, 862 F.2d 427, 428 (2d Cir. 1988). Under that test, the court asks: "Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Bayless,* 201 F.3d 116, 126 (2d Cir. 2000) (quoting *Diamondstone v. Macaluso,* 148 F.3d 113, 120-21 (2d Cir. 1998)).

*Estate of Puppolo v. Welch,* No. 5:14-cv-95, Opinion on Motion for Recusal, 1/31/18, Doc. 100, p.7.

The Seven Days Sessions Article shows a pattern of conduct that is relevant to several issues in this case, including actual malice under the First Amendment, and malice for punitive damages. "When actual malice in making a defamatory statement is at issue, the critical question is the state of mind of those responsible for the publication." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019). In *Palin,* the dismissal of a defamation suit was reversed because on a motion to dismiss the district court had taken testimony from the Times editorial page editor who had written the allegedly defamatory editorial, and based on that evidence had concluded there was no evidence of actual malice.

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

In the context of the motion to dismiss as well as Palin's motion to amend, the court discussed the latitude that should be afforded a plaintiff in developing evidence on the issue of actual malice. The court specifically noted that plaintiff's proposed amended complaint [PAC] offered the following plausible theories to show actual malice:

> The PAC contains allegations that paint a plausible picture of this actual-malice scenario in three respects: (1) Bennet's background as an editor and political advocate provided sufficient evidence to permit a jury to find that he published the editorial with deliberate or reckless disregard for its truth, (2) the drafting and editorial process also permitted an inference of deliberate or reckless falsification, and (3) the Times' subsequent correction to the editorial did not undermine the plausibility of that inference.

*Id.* 813. In this Circuit, therefore, the background, bias, motivation, and/or agenda of the publisher are relevant in a defamation suit.

Here, the Seven Days Sessions Article is evidence that shows a journalistic practice of creating a target, a bad actor, for stories on race in order make them more sensational, enhance sales and come across as a paper committed to social justice. Despite Ms. Sessions' express denial that her resignation was related to the allegation of discrimination, and despite the absence of any evidence to the contrary, Seven Days constructed an article that by implication labeled her a racist.

Starting with the headline, Seven Days made the story about Ms. Sessions as the target. The prominent display of her photo on the first page left no doubt that the story was about Ms. Sessions. The theme of the story was her departure during an ongoing investigation of racism which according to the article "raises questions." *Id.* Yet, none of the people interviewed in the article said questions were raised about Ms. Sessions'

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

7

departure. Seven Days made it up, the same way it made up in the Leise Article that in a 109-page report with some 65 calls to VSP, 18 VSP incidents, and 20 troopers, spanning from September to December 2017, there was "one incident of particular note" with plaintiff's brief encounter with Dr. Clemmons in October 2017. Plaintiff was made a target of the Leise Article consistent with Seven Days' approach that had similarly made Ms. Sessions a target in the Sessions Article. The Sessions story could have been about the allegation by a mother that the school had treated her son in a racist manner, but Seven Days needed a target, a bad actor, for the racist label to make the story more sensational and profitable. This pattern of journalistic practice supports plaintiff's burden to show malice in this case.

Seven Days used in both articles some of the same themes to attack its targets with the stain of racism. For example, in the Leise Article, Seven Days pitched plaintiff's encounter with Dr. Clemmons as a white trooper being skeptical of a black person. Similarly in the Sessions Article, the "school officials" (code for Ms. Sessions) questioned the credibility of a black mother and her child. The theme in both articles was that it was racist for white people to "poke holes" in a black person's story.

It is too early at this point to predict how discovery will develop and whether other reasons for recusal may arise including for example the outcome of the HRC investigation of the Tyler complaint, the handling of the investigative report and the disposition of that complaint. It is nonetheless evident that the Sessions Article will be an issue in this case, may require rulings on discovery and evidentiary issues, may involve testimony from Ms. Sessions or about her, and/or may be used by expert witnesses. Objectively, it would not

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

be humanly possible for Judge Sessions to remain impartial when dealing with the "tar and feather" exercise by Seven Days at the end of his spouse's distinguished career in education. Whether a judge in the position of Judge Sessions may be upset by the manner Seven Days treated his wife, and/or that plaintiff intends to use such evidence in this case, the Judge's impartiality will be questioned.

**Compliance with Local Rule 7(a)(7)**

Defendant Da Capo will not consent to the relief sought after having been provided a copy of the draft motion to recuse.

For these reasons, the motion should be granted.

Dated this 1st day of March, 2022.

Respectfully Submitted,

/s/ Kaveh S. Shahi, Esq.
Cleary Shahi & Aicher, P.C.
PO Box 6740
Rutland, Vermont 05702
(802) 775-8800
kss@clearyshahi.com
ATTORNEYS FOR PLAINTIFF