UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ANDREW LEISE,<br>     Plaintiff,<br><br>v.<br><br>VERMONT HUMAN RIGHTS<br>COMMISSION; KEVIN CHRISTIE; BOR<br>YANG; DACAPO PUBLISHING, INC.;<br>JOHN AND JANE DOE I-X,<br>     Defendants. | Docket No. 2:22-CV-9 |

## DEFENDANTS' MOTION TO DIVEST DISTRICT COURT OF JURISDICTION, OR ALTERNATIVELY TO STAY LITIGATION

  Defendants Kevin Christie ("Christie"), Bor Yang ("Yang"), by and through their attorneys Langrock Sperry & Wool, LLP, hereby move to divest the district court of jurisdiction, or alternatively to stay litigation pending their appeal of this court's denial of qualified immunity. As grounds for this Motion, Defendants rely on the following Memorandum of Law.

Memorandum of Law

  On April 1, 2022, Vermont Human Rights Commission ("VHRC"), Christie and Yang filed a Motion to Dismiss ("Motion") the Complaint.[1] On March 24, 2023, the Court issued an Opinion and Order (Doc. 66). In relevant part, that Opinion and Order dismissed all claims against VHRC, and against Christie and Yang in their official capacities on the basis of sovereign immunity; dismissed all claims against Yang and Christie in their individual

---

[1] Plaintiff has since filed an Amended Complaint and Supplemental First Amended Complaint ("SFAC"). The Court's Opinion and Order, and accordingly this Motion, pertains to the SFAC.

1

capacities except to the extent the claims relate to the release of the Investigative Report to Seven Days; denied qualified immunity to Christie and Yang in their individual capacities on the three claims under 42 U.S.C. §1983; and denied the motion to dismiss the invasion of privacy and defamation claims against Yang and Christie to the extent the claims relate to the release of the Investigative Report. On April 10, 2023, Yang and Christie filed a Notice of Appeal to the Second Circuit Court of Appeals "as to those portions of the Opinion and Order denying qualified immunity to Defendants Christie and Yang; and as to any other decision, judgment or order therein adverse to the interests of Defendants that is subject to an interlocutory appeal."

I.     District Court Jurisdiction is Divested by Christie's and Yang's Appeal

The general rule is that the "filing of the notice of appeal divest[s] the district court of jurisdiction" over the action. *Hom Sui Ching v. United* States, 298 F.3d 174, 180 n.5 (2d Cir. 2002). its control over those aspects of the case involved in the appeal." *Toliver v. Cnty. of Sullivan,* 957 F.2d 47, 49 (2d Cir. 1992). While the Second Circuit has not directly applied this rule where a defendant files an interlocutory appeal from a district court's denial of qualified immunity, *see National Rifle Association of America v. Cuomo*, 2022 WL 152534, at *1 (N.D.N.Y. Jan. 18, 2022), the First, Fifth, Seventh and Ninth Circuits "have all held that district courts are automatically divested of jurisdiction" once an interlocutory qualified immunity appeal has been filed." *Id.*, collecting cases; *Williams v. Brooks*, 996 F.2d 728, 729 (5th Cir. 1993) ("[T]he traditional rule that the filing of a notice of appeal divests a district court of jurisdiction . . . applies with particular force in the immunity context."); *see also Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir. 1990); *Cf. In re World Trade Center Disaster Cite Litig.*, 503 F.3d 167, 169 (2d Cir.2007) (vacating stay and finding that it was necessary to

remand to district court, since appeal had divested it of jurisdiction, and vacating the stay "would accomplish nothing unless [the appellate court] were also at least partially to restore the District Court's jurisdiction"). At least some district courts within the Second Circuit have similarly held that "in the qualified immunity context … the filing of a notice of interlocutory appeal divests the district court of jurisdiction." *See e.g. Hallock v. Bonner*, 2003 WL 22519644 (N.D.N.Y. Nov. 4, 2003).

In this case, the only claims that survived the Opinion and Order are the three claims under 42 U.S.C. §1983, which are all the subject of appeal on qualified immunity grounds, and two pendent state law claims, which are also subject to appellate jurisdiction because they are closely related to the federal claims. *See Golino v. City of New Haven*, 950 F.2d 864, 868-69 (2d Cir. 1991); *see also Ross. v. Am. Exp. Co.*, 547 F.3d 137, 142 (2d Cir. 2008). The court should therefore find that jurisdiction over the case now rests exclusively within the Second Circuit.

II.     The Court Should Enter a Discretionary Stay of All Proceedings Pending Appeal

Alternatively, if the court does not find that its jurisdiction has been automatically divested as a result of the appeal, it should nevertheless exercise its discretion to stay further proceedings and discovery pending the Second Circuit's disposition of the appeal. In considering whether to grant such a stay, the court is directed to consider four factors: (1) whether the applicant will be irreparably injured absent a stay; (2) whether a stay will substantially injure the other parties; (3) whether the applicant has made a strong showing that they are likely to succeed on the merits; and (4) the public interest. *Mohammed v. Reno*, 309 F.3d 95, 100-01 (2d Cir. 2002); *Natl. Rifle Assn. v. Cuomo*, 2022 WL 152534, at \*2; *Noel Pane v. Town of Greenburgh*, 2012 WL 12886971, at \*3 (S.D.N.Y. Mar. 21, 2012).

   A.  Christie and Yang Will Be Irreparably Harmed Absent a Stay

  The Supreme Court has made it clear that qualified immunity is "*an immunity from suit* rather than a mere defense to liability …[I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The basis for permitting interlocutory appeal of qualified immunity denials is precisely to spare officials from the burden of discovery where they may be entitled to dismissal on the basis of immunity. If this Court were to deny Defendants' motion for a stay pending their appeal of the denial of qualified immunity, they "would be irreparably harmed by the failure to grant a stay as [they] would lose any immunity from suit to which [they] might be entitled…" *Noel Pane*, 2012 WL 12886971, at *4.

  The Supreme Court has repeatedly held that the immunity from standing trial extends to immunity having to engage in discovery. Qualified immunity thus provides protection "not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (interior quotation marks and citation omitted) (emphasis in original). *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery.") (interior quotation marks and citation omitted).

  Plaintiff in this matter has already served extensive and intrusive discovery requests on Yang and Christie and a subpoena for documents to VHRC. *See* Exhibit 1. Many of his requests are arguably precluded by the limitations imposed by the court in its Opinion and Order. If Yang and Christie are required to participate in discovery at this stage, while their entitlement to qualified immunity remains undetermined, they will be forced to negotiate and

4

perhaps litigate the appropriate scope of discovery. They will be subjected to the burden of engaging in discovery, including searching their records for and producing voluminous documents, answering extensive interrogatories, and sitting for deposition while their appeal is pending. Avoiding this sort of burdensome and distracting activity is exactly what qualified immunity is intended to avoid, where appropriate. Defendants cannot be made whole if they are improperly required to engage in discovery if they should have been entitled to immunity.

As they argue below and in their Opposition to Plaintiff's Motion for Certification of Appeal as Frivolous (Doc. 78), Yang and Christie contend that they are entitled to qualified immunity as a matter of law, regardless of what discovery may reveal. Their interest in avoiding such discovery pending their appeal is exceedingly strong, and weighs heavily in favor of granting a stay.

      B.      Plaintiff Will Not Be Harmed by a Stay

Plaintiff in this action seeks only damages and no injunctive relief. While a stay may require Plaintiff to wait for his day in court (if ever), courts have consistently found that a civil rights plaintiff in a suit for damages is not "substantially injured" by a stay, because they "will be able to recover monetary damages as compensation for any injury that [they] can prove [they] suffered." *Noel Pane*, 2012 WL 12886971, at *4; *Plummer v. Quinn*, 2008 WL 383507, at *1 (S.D.N.Y. Feb. 12, 2008) (where plaintiff can be compensated through award of damages, plaintiff will not be substantially injured by issuance of stay).

Accordingly, this factor weighs in favor of a stay.

      C.      Christie and Yang Are Likely to Succeed on the Merits of Their Appeal

The Second Circuit has not adopted a specific metric for the likelihood of success on the merits, but rather balances it along with the other factors. "The necessary 'level' or

'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Mohammed*, 309 F.3d at 100-01. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the appellant] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* (quotation omitted). Here, "because the potential for irreparable injury to [Defendants] absent a stay is substantial[,] Defendants need only make a minimal showing of likelihood of success on appeal." *Plummer*, 2008 WL 383507, at *1, *citing Mohammed*, 309 F.3d at 100-101.

It is respectfully submitted that Yang and Christie have a significant likelihood of success on the merits of their appeal, especially with respect to their assertion of qualified immunity for the three claims under 42 U.S.C. §1983.

Where a claim of qualified immunity can be resolved on a pure issue of law or on an agreed version of the facts, it should be reviewed on an interlocutory appeal. The Supreme Court wrote that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell*, 472 U.S. at 530. Succinctly put, "an order denying qualified immunity, to the extent it turns on an issue of law, is immediately appealable." *Behrens*, 516 U.S. at 311 (internal citations omitted).

However, interlocutory review of qualified immunity is not necessarily defeated because of the existence of disputed facts. "[A] decision is not insulated from review simply because the district court declared that genuine issues of fact exist. Rather, where a district court denies a defendant qualified immunity, there is appellate jurisdiction over that defendant's interlocutory appeal if the defendant contests the existence of a dispute or the materiality as a matter of law, or contends that he is entitled to qualified immunity even under

6

the plaintiff's version of the facts." *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 712 (2d Cir. 2022) (internal citations omitted); *Anello v. Anderson*, 518 F. App'x 24, 25 (2d Cir. 2013) (quoting *Tierney v. Davidson*, 133 F.3d 189, 194 (2d Cir. 1998)) (Court of Appeals may "exercise interlocutory jurisdiction if the defendant contests the existence of a dispute or the materiality thereof" or "contends that he is entitled to qualified immunity even under plaintiff's version of the facts."). In that circumstance, the appellate court has "jurisdiction to determine whether the issue is *material*, but not whether it is *genuine*." *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (citation omitted) (emphasis in original).

In this case, even assuming the Plaintiff's version of the facts, and assuming the questions of fact identified by the court in its Opinion and Order are resolved in favor of the Plaintiff, Yang and Christie are nevertheless entitled to qualified immunity as a matter of law.

1. Count 1: Alleging Violation of Procedural Due Process Under 42 U.S.C. §1983

Yang and Christie argue that the Plaintiff failed to identify a clearly established federal right that was violated with respect to Count One. Plaintiff's claim is that Yang and Christie, by publishing a willfully false statement – the Investigative Report – accused him of being "racist." He further alleges that he was unable to continue working as a uniformed police officer as a result of that accusation. For purposes of §1983, his legal theory is that the statement was not merely defamatory, as defamation does not constitute a deprivation of a federally protected liberty interest, *Connecticut Department Of Public Safety v. Doe*, 538 U.S. 1, 6-7 (2003), *citing Paul v. Davis*, 424 U.S. 693 (1976), but rather fell within the small class of "stigma plus" claims. Such claims require both a defamatory statement and a separate

7

"state-imposed burden or alteration of status … '*in addition* to the stigmatizing statement." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (emphasis in original).

Plaintiff has not alleged a "state-imposed burden or alteration of status" separate and apart from the stigmatizing statement itself. As then-Judge Sotomayor noted in *Sadallah*, "deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Id.* (citation omitted). Plaintiff alleges only that he had difficulty working as a consequence of the release of the Investigative Report. Because Plaintiff does not allege any state-imposed burden or alteration of his status other than the consequences of his supposedly tarnished reputation, he does not meet the stigma plus test. As in *Sadallah*, the harms alleged by the Plaintiff are the direct "deleterious effects" of the alleged defamation, not a separate harm in addition to it.

It is important to note that the stigma plus claim fails regardless of whether Yang's and Christie's release of the Investigative Report was authorized under state law. Accepting for purposes of the appeal that Yang and Christie deliberately falsified the conclusions of the Investigative Report; that they released the document to the press in violation of state law; and that Plaintiff found it difficult to continue working as a police officer as a result of that release of information, the allegations still do not state a violation of clearly established federal law under the stigma plus theory. *See Tooly*, 919 F.3d at 172 ("[W]e have repeatedly held [] that a state statute does not serve as 'clearly established law' for purposes of qualified immunity…. To determine whether a violation of state law overcomes federal qualified immunity, then, the court must determine whether the conduct that violated the state statute also violates clearly established federal law, and this is a distinct and separate inquiry.)

8

Because the facts identified by Plaintiff do not present a violation of a clearly established application of the stigma plus doctrine, he cannot overcome the qualified immunity hurdle for Count One.

    2.   Count 2: Alleging Violation of Procedural Due Process Under 42 U.S.C. §1983

Plaintiff's second theory is that he had a constitutionally protected property interest in his employment as a state trooper; that he was accordingly entitled to notice and an opportunity to be heard before his employer took adverse action against his employment; and that his right to procedural due process was violated when he became unable to work as a result of Yang's and Christie's allegedly defamatory statements and improper release of the Investigative Report. He alleges that he was deprived of his property interest in his employment as a trooper without any due process of law.

This claim fails as a matter of law for many reasons, among them that (as is apparent from the face of the Supplemental First Amended Complaint) (1) Leise continued to be employed by the Vermont State Police; (2) Yang and Christie weren't his employer; (3) Yang and Christie didn't terminate him; and (4) there is no duty for third parties to give an employee pre-termination Loudermill notice. Plaintiff's theory of a violation of procedural due process is at best a novel and creative application of law. *See Tooly*, 919 F.3d at 175 ("For qualified immunity to apply, it is sufficient that no clearly established law has held that 'an officer acting under similar circumstances' violated an employee's due process rights.").

Yang and Christie are entitled to qualified immunity for Count Two, even if the Investigative Report was improperly released under state law, because Plaintiff has not pled a cognizable claim that Yang and Christie deprived him of his state employment without

affording him Loudermill rights. Plaintiff has cited no "well-established" law, and indeed no precedent at all, for the key propositions that underlie his claim: that a person's improper release of a defamatory statement can constitute "constructive discharge" where the subject of the statement was not the releasor's employee; that anyone other than an employer can "constructively discharge" an employee; that a person is entitled to notice and an opportunity to be heard before a constructive discharge; that a person is entitled to Loudermill notice and opportunity to be heard from anyone other than his employer. These deficiencies entitle Yang and Christie to qualified immunity regardless of the resolution of any factual issues regarding the confidentiality of the Investigative Report.

### 3. Count 3: Alleging Violation of Substantive Due Process Under 42 U.S.C. §1983

Finally, Count Three fails, even if the Investigative Report was improperly released, because Plaintiff has done no more than make a conclusory assertion, unsupported by facts, that Yang's and Christie's conduct "shocked the conscience," without identifying a constitutional right at issue. *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) ("The first step in substantive due process analysis is to identify the constitutional right at stake."). Without the Plaintiff having identified a constitutional right at state, Yang and Christie are likely to succeed on appeal of their entitlement of qualified immunity for Count Three, regardless of whether release of the Investigative Report violated state law.

### 4. Counts 4 and 5: Invasion of Privacy and Defamation

The Court held that Yang and Christie have absolute immunity for the investigation, decision-making process, and creation of the Final Determination. It accordingly limited Counts IV and V to claims that "relate to the release of the Investigative Report to Seven

Days." In analyzing whether the Plaintiff has plausibly pled actual malice, however, the Court considered allegations related to the conduct for which Yang and Christie have absolute immunity. If only those allegations related to the release of the Report are considered, Plaintiff has not adequately pled actual malice.

On page 39 of the Opinion and Order, the Court evaluated the pleading of actual malice with reference to allegations that (1) the "Investigative Report was changed for the purpose of making an example of [Leise] and for making the VSP appear discriminatory even though many years of investigation allegedly yielded no evidence of discrimination"; and (2) that the Defendants "departed from [their] normal practices and statutory duties in releasing the Investigative Report to Seven Days." The first of those allegations, however, addresses the investigation and decision-making process, actions for which the Court has held that Yang and Christie have absolute immunity. Such conduct accordingly cannot be considered for purposes of determining whether Plaintiff has pled actual malice.

With nothing other than a bare allegation that Defendants "departed from their normal practices and statutory duties" in releasing the report, the "close question" tips against Plaintiff. It is even scanter evidence of malice than the allegation Plaintiff made against Defendant DaCapo Publishing, Inc., which the Opinion and Order stated was "minimal to nonexistent." Opinion and Order, p. 44. He has not adequately pled actual malice to support either a defamation or invasion of privacy claim.

5. <u>Release of the Investigative Report Under State Law</u>

While the Court was not able to conclude that release of the Investigative Report did not violate state law, the Opinion and Order did not address the HRC Rules or the Vermont Public Records Act ("PRA"). In fact, Code Vt. Rules 80 250 001, § 34 (HRC Rule 34) states

11

that "The Commission's investigative file includes all materials gathered by the Commission's investigators during the course of their investigation…The investigative file also does not include analysis, such as but not limited to, statistical analysis that the investigator has created with information provided by either party." It is HRC Rule 34 in conjunction with the PRA, 1 V.S.A. § 317, that mandates the release of the report. Where there is no clearly established right to the nondisclosure of a record, the HRC is required to disclose under the PRA. This is true not only because the HRC is a state entity governed by the PRA but also because the responding party in the investigation is the State of Vermont (the Department of Public Safety and the Vermont State Police) and has no right to privacy.

The Defendants' arguments on appeal are serious and meritorious, and sufficiently likely to prevail on appeal that they meet the Circuit's requirements for a stay.

        D.        The Public Does Not Have a Substantial Interest Either Way

In such situations, where "competing public interest considerations" are present between the plaintiff's desire for prompt action and a defendant's right to vindicate their entitlement to qualified immunity, courts have often held that the public interest does not weigh either for or against a stay. *See e.g. Noel Pane*, 2012 WL 12886971, at *4; *Plummer*, 2008 WL 383507, at *2. Other courts have found that this factor weighs in favor of a stay. *See e.g. Natl. Rifle Assn. of Am. v. Cuomo*, 2022 WL 152534, at *4.

Taken together, the four factors to be considered by the court weigh in favor of staying all further litigation in this matter until the resolution of Yang and Christie's appeal to the Second Circuit.

CONCLUSION

WHEREFORE it is respectfully requested that this honorable court declare that it is divested of further jurisdiction in this matter pending resolution of the appeal to the Second Circuit Court of Appeals; or alternatively stay all further litigation and discovery pending such appeal; or grant such other relief as it deems just and necessary.

DATED at Burlington, Vermont this 21st day of April, 2023.

LANGROCK SPERRY & WOOL, LLP


_____
Lisa B. Shelkrot
Justin G. Sherman
PO Box 721, 210 College Street
Burlington, VT 05402
lshelkrot@langrock.com
jsherman@langrock.com
Phone:  (802) 864-0217

Attorneys for Defendants Vermont Human Rights Commission; Kevin Christie; Bor Yang

Certification Pursuant to Local Rule 7(a)(7)

I hereby certify that on March 30, 2023 I spoke by telephone to counsel for Plaintiff and sought consent for a stay of proceedings and discovery. Plaintiff's counsel advised that he does not so consent.

LANGROCK SPERRY & WOOL, LLP



_____
Lisa B. Shelkrot
Justin G. Sherman
PO Box 721, 210 College Street
Burlington, VT 05402
lshelkrot@langrock.com
jsherman@langrock.com
Phone: (802) 864-0217

Attorneys for Defendants Vermont Human Rights Commission; Kevin Christie; Bor Yang

1954651.2