UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANDREW LEISE, )
)
Plaintiff, )
)
v. ) Case No. 2:22-cv-00009
)
VERMONT HUMAN RIGHTS )
COMMISSION, KEVIN CHRISTIE, BOR )
YANG, DA CAPO PUBLISHING, INC., and )
JOHN AND JANE DOE I-X, )
)
Defendants. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION, GRANTING DEFENDANTS' MOTION IN THE ALTERNATIVE FOR A CERTIFICATE OF APPEALABILITY, AND DENYING PLAINTIFF'S MOTION FOR CERTIFICATION OF DEFENDANTS' APPEAL AS FRIVOLOUS**
(Docs. 68, 77)

Pending before the court is a motion for reconsideration, or in the alternative, motion for a certificate of appealability filed by Defendants Vermont Human Rights Commission (the "VHRC"), Kevin Christie, and Bor Yang (collectively, the "VHRC Defendants") (Doc. 68), as well as a motion for certification of Mr. Christie's and Ms. Yang's interlocutory appeal as frivolous filed by Plaintiff Andrew Leise. (Doc. 77.)

Plaintiff is represented by Kaveh S. Shahi, Esq. The VHRC Defendants are represented by Justin G. Sherman, Esq., and Lisa B. Shelkrot, Esq. Da Capo Publishing, Inc. ("Seven Days") is represented by Matthew B. Byrne, Esq.

**I.    Factual and Procedural Background.**

On March 24, 2023, the court issued an Opinion and Order granting in part and denying in part the VHRC Defendants' April 1, 2022 motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 66.) The Opinion and Order dismissed all of Plaintiff's claims against the VHRC Defendants except for Plaintiff's 42 U.S.C. § 1983 claims (Counts I,

II, and III) against Mr. Christie and Ms. Yang in their individual capacities, to the extent those claims relate to the allegedly wrongful release of a confidential investigative report (the "Investigative Report") to the newspaper Seven Days, and Plaintiff's invasion of privacy and defamation claims (Counts IV and V) against Mr. Christie and Ms. Yang in their individual capacities, to the extent those claims relate to the release of the Investigative Report to Seven Days. The court dismissed Seven Days, the VHRC, Mr. Christie in his official capacity, and Ms. Yang in her official capacity from the case. It deferred ruling on whether Mr. Christie and Ms. Yang were entitled to qualified immunity on the § 1983 claims until after the development of a factual record.

The parties do not challenge the Opinion and Order's recitation of the factual allegations in Plaintiff's Supplemental First Amended Complaint ("SFAC") which the court incorporates by reference herein.

## II. Conclusions of Law and Analysis.

### A. The VHRC Defendants' Motion for Reconsideration.

The VHRC Defendants seek reconsideration of the court's denial of their motion to dismiss with regard to Plaintiff's § 1983 claims because the court failed to analyze whether the SFAC states a § 1983 claim for which relief may be granted. Incorporating by reference the arguments made in their motion to dismiss, they seek dismissal of those claims pursuant to Rule 12(b)(6) if they are not entitled to qualified immunity.

The VHRC Defendants further seek reconsideration of the court's analysis of the sufficiency of Plaintiff's state law defamation and invasion of privacy claims. Because the court held that Mr. Christie and Ms. Yang were entitled to absolute immunity with regard to the VHRC's investigation, decision-making process, and Final Determination, they argue that the court erred by considering facts related to those issues in evaluating whether Plaintiff plausibly alleged actual malice.

"It is well-settled that a party may move for reconsideration and obtain relief only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir.

2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). This standard must be "narrowly construed and strictly applied so as to 'avoid duplicative rulings on previously considered issues' and prevent [motions for reconsideration] from being used to advance theories not previously argued or 'as a substitute for appealing a final judgment.'" *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016) (quoting *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)); *accord Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("[T]he standard for granting a []motion for reconsideration is strict[.]") (alteration adopted) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

A motion for reconsideration is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Tonga Partners, L.P.*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

### B. Whether the Court Failed to Analyze the Sufficiency of Plaintiff's § 1983 Claims.

The VHRC Defendants assert the court did not address the sufficiency of Plaintiff's § 1983 claims in its March 24, 2023 Opinion and Order and instead awaited resolution of the factual issue of whether the Investigative Report was required by law to remain confidential. If the Investigative Report is not required by law to remain confidential, the factual and legal crux of Plaintiff's § 1983 claims dissipates.

The VHRC Defendants contend that because the Investigative Report contains the investigator's legal analysis, it was not part of the VHRC's confidential investigative file.[1] The VHRC, however, lacks the authority to alter a Vermont law through its own interpretation of what constitutes an "investigative file" unless the Vermont Legislature has delegated that authority. Accordingly, the question remains one of legislative intent

---

[1] While Vermont law provides that the VHRC's "investigative files shall be confidential[,]" 9 V.S.A. § 4555(a)(1), the VHRC's own rules are less clear and state: "The investigative file also does not include analysis, such as but not limited to, statistical analysis that the investigator has created with information provided by either party." 11-1 Vt. Code R. § 1 (2014).

3

as well as how investigative reports are maintained in practice. Neither source of information is currently before the court. The court nonetheless agrees that the VHRC Defendants sought dismissal of the § 1983 claims under Fed. R. Civ. P. 12(b)(6) as an alternative ground in their motion. While it would be preferable to have a factual record for this analysis as well, the court agrees that certain claims may be dismissed at the pleading phase. The court thus GRANTS IN PART the VHRC Defendants' request for reconsideration.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

In Counts I, II, and III of the SFAC, Plaintiff asserts § 1983 claims for deprivations of liberty and property interests protected by procedural and substantive due

4

process.

### C. Whether the SFAC States a Procedural Due Process Liberty Interest Claim.

To state a claim for a "constitutionally cognizable deprivation of liberty without sufficient process[,]" a plaintiff must assert "(1) that [he or] she possessed a cognizable liberty interest, and (2) that the defendants deprived [him or] her of that same liberty without providing process adequate to justify their actions." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005). Generally, "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 329-30 (2d Cir. 2004). The "stigma plus" doctrine, however, "provides a remedy for government defamation under federal constitutional law" when it occurs concurrently with the loss of a tangible interest. *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).

> To prevail on a "stigma plus" claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.

*Id.* (internal quotation marks omitted). "While there is 'no rigid requirement that both the 'stigma' and the 'plus' must issue from the same government actor or at the same time,' they must be 'sufficiently proximate.'" *Mudge v. Zugalla*, 939 F.3d 72, 80 (2d Cir. 2019) (alteration adopted) (quoting *Velez*, 401 F.3d at 89).

"[D]eleterious effects which flow directly from a sullied reputation [are] normally . . . insufficient" to "satisf[y] the 'plus' prong" of a stigma plus claim, including "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994). Courts, however, have found the "'deprivation of a plaintiff's property' or the 'termination of a plaintiff's government employment'" to be burdens sufficient to satisfy the stigma plus standard. *Mudge*, 939 F.3d at 80 (quoting *Sadallah*, 383 F.3d at 38).

5

A plaintiff must "first show that the government made stigmatizing statements about him" because the statements "call into question [the] plaintiff's good name, reputation, honor, or integrity[,]" or "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Patterson*, 370 F.3d at 330 (internal quotation marks omitted). Plaintiff satisfies this prong by citing the Investigative Report's statements that he discriminated against Lydia Clemmons, PhD, based on gender and race and accusing him of conducting his law enforcement activities in a racist manner.[2] He further plausibly alleges that Mr. Christie and Ms. Yang intentionally made these stigmatizing statements public. *See id.* (requiring a plaintiff "only to raise the falsity of these stigmatizing statements as an issue, not prove they are false" and must also "prove these stigmatizing statements were made public"). Plaintiff has thus plausibly alleged "stigma" under the first prong of the stigma-plus test.

With regard to the second prong, Plaintiff plausibly alleges that he has suffered reputational damage by having allegedly confidential investigative material published in his community. He claims that, as a result, he suffered a de facto demotion at the Vermont State Police (the "VSP") in light of his diminished duties and reduced income, and he has further lost a position at the University of Vermont Medical Center. *See Velez*, 401 F.3d at 88-89 (citing with approval and joining other Circuits that stigma and plus need not derive from the same source provided there is temporal proximity). At the pleading stage, this is sufficient to plead that Mr. Christie and Ms. Yang publicly made false, stigmatizing statements about him that created a government-imposed "alteration of status . . . *in addition* to the stigmatizing statement." *Sadallah*, 383 F.3d at 38 (internal quotation marks omitted); *see also Baden v. Koch*, 799 F.2d 825, 831 (2d Cir. 1986)

---

[2] In a Summary Order, the Second Circuit addressed whether the term "racist" was an opinion because "[u]nlike the Federal Constitution, the New York Constitution provides for absolute protection of opinions." *Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977, at *4 (2d Cir. June 8, 2023) (internal quotation marks omitted). Based on the context in which the statement was made in that case, the court concluded it was.

(holding that plaintiff who was demoted to deputy chief medical executive from chief medical executive asserted a liberty interest, albeit a "weak" one, for purposes of his stigma plus claim).

Although Plaintiff alleges that the stigmatizing statements were made by the VHRC Defendants and the change in his employment was imposed by his employer, the VSP, both are "arms" of the State of Vermont and "perfect parity in the origin of both the 'stigma' and the 'plus' is not required to state the infringement of a 'stigma-plus' liberty interest." *Velez*, 401 F.3d at 89 ("[E]ven where a 'stigma' and 'plus' are not imposed by the same actor, a stigma-plus claim may be valid if the 'stigma' and 'plus' were connected.").

In *Velez*, however, the Second Circuit imposed a final burden that Plaintiff has not overcome. It held that a plaintiff cannot maintain a stigma plus claim against defendants who made stigmatizing statements but lacked "the power to provide process to the plaintiff." *Id.* at 93.

In this case, although Plaintiff alleges that the VHRC Defendants' statements in the Investigative Report altered the terms and conditions of his employment, he fails to plausibly allege that the VHRC Defendants had the legal authority to bring about a change in his employment or offer due process to him. Stated differently, because Mr. Christie and Ms. Yang "had no legal authority to bring about [the plaintiff's] ouster" or demotion, they could not "be held legally accountable for the alleged process failure." *Id.* To the extent that Plaintiff alleges Mr. Christie "refused to provide [him] an opportunity to meet with [the V]HRC to discuss clearing his name" after the alleged deprivation, he does not allege how a name clearing would have altered his VSP employment status or duties. (Doc. 58-4 at 46, ¶ 113.) In an amended complaint, Plaintiff may seek to explain this causal relationship and the alleged remedies Mr. Christie and Ms. Yang could have provided him. At this juncture, he has not done so.

Because Plaintiff fails to adequately allege a procedural due process liberty interest claim against Mr. Christie and Ms. Yang in their individual capacities, Count I of the SFAC is DISMISSED.

### D. Whether the SFAC States a Procedural Due Process Property Interest Claim.

Plaintiff's procedural due process claim alleging deprivation of a property interest fails for the same reason as his stigma plus claim. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).

Plaintiff points to no authority for a procedural due process claim against an entity which cannot provide due process before or after the deprivation of a constitutionally protected property interest. To the contrary, under *Velez*, Plaintiff cannot maintain a procedural due process claim against Mr. Christie or Ms. Yang without plausibly alleging that they had the power to provide the process sought or reverse the VSP's demotion decision. *See Velez*, 401 F.3d at 93 (dismissing procedural due process claim against defendants without power to impose deprivation or provide process to plaintiff); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) (evaluating whether process provided a "meaningful opportunity to invoke the discretion of the *decisionmaker*") (emphasis supplied). Because the SFAC fails to plausibly allege that either Mr. Christie or Ms. Yang may be held liable for a procedural due process violation stemming from the deprivation of Plaintiff's property interest in his state employment, the court DISMISSES Count II as to Mr. Christie and Ms. Yang in their individual capacities.

### E. Whether the SFAC States a Substantive Due Process Claim.

Although a stigma-plus liberty interest is an actionable theory of relief on a procedural due process claim, it is not a fundamental right protected by substantive due process. For this reason, "a 'stigma-plus' claim is only actionable as a procedural due process claim, not as a substantive due process claim." *Hogan v. City of Fort Walton Beach*, 817 F. App'x 717, 723 (11th Cir. 2020) (internal quotation marks omitted); *see also Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) ("[S]tigma plus is a species within the phylum of procedural due process claims[.]"); *Doe v. Mich. Dep't of*

8

*State Police*, 490 F.3d 491, 502 (6th Cir. 2007) ("The stigma-plus test is used to determine whether state action violates an individual's procedural due process rights. Our review of the caselaw has failed to identify any case that applies the stigma-plus test to a substantive due process claim.") (citation omitted).

"The first step in [a] substantive due process analysis is to identify the constitutional right at stake." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 109 (2021) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). "Next, the plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (internal quotation marks omitted) (quoting *Southerland v. City of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012)). "The interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* (internal quotation marks omitted).

"Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" *Loc. 342, Long Island Pub. Serv. Emps. v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994). Beyond the rights guaranteed by the first eight Amendments, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Under the doctrine of judicial self-restraint, courts must "exercise the utmost care" when defining or developing rights in this area. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).

Courts have declined to recognize continued public employment as a fundamental right protected by substantive due process. *See, e.g., Nicholas v. Penn. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) (holding that plaintiff's "tenured public employment" was not "a fundamental property interest entitled to substantive due process protection" and noting that the court "thereby join[s] the great majority of courts of appeals that have addressed this issue"); *Leach v. City of Newburgh*, 2018 WL 6411360, at *6 (S.D.N.Y. Dec. 6, 2018) (collecting cases and observing that "[t]he right to continued public

9

employment, however, is not a cognizable interest that is accorded the protection of substantive due process"); *Mathirampuzha v. Potter*, 2010 WL 55061, at *9 (D. Conn. Jan. 4, 2010) ("The Second Circuit has never articulated a fundamental interest in public employment giving rise to substantive due process protection, and many other courts have explicitly declared that public employment is not protected by substantive due process."). The Supreme Court has further observed that:

> [b]ecause the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society, [the Court] ha[s] previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law[.]

*Collins*, 503 U.S. at 128.

Plaintiff's alleged interest in the loss of his reputation is arguably analogous to the interest protected by Vermont's defamation law. Allowing Plaintiff to assert a substantive due process claim for harm to his reputation could potentially "constitutionalize broad swaths of state tort law." *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 404 (3d Cir. 2000) ("If [plaintiff's] claim can survive, the same could be said for any number of mundane state tort cases that lack a clear constitutional basis."); *see also Schultz v. Inc. Vill. of Bellport*, 2010 WL 3924751, at *7 (E.D.N.Y. Sept. 30, 2010), *aff'd*, 479 F. App'x 358 (2d Cir. 2012) ("[B]ecause the Supreme Court has cautioned against expansion of the scope of substantive due process rights, courts are reluctant to convert employment related defamation claims into substantive due process claims.") (citation omitted).

The strongest argument in favor of recognizing Plaintiff's substantive due process claim is that in *Velez*, the Second Circuit recognized a claim on this basis. It ruled that public officials may not "intentionally and maliciously fabricate[] and disseminate[] falsehoods" with "no legitimate purpose" and for no reason other than "to deprive [a public employee] of her job[,]" "oppress her," and "cause her injury." *Velez*, 401 F.3d at 94. Although it found that the claim was more properly characterized as a First Amendment violation, in doing so, the *Velez* court made the following observations:

> We tend to speak of that which shocks the conscience largely in the context

> of excessive force claims. But it can apply to other areas of government activity as well. The measure of what is conscience-shocking is no calibrated yard stick. Nevertheless, malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock the conscience. This is so because our constitutional notion of due process rests on the bedrock principle that we must protect the individual against . . . the exercise of power without any reasonable justification in the service of a legitimate governmental objective.
>
> Here, the pleadings allege that the board member defendants, together with the Chancellor and the investigators, intentionally and maliciously fabricated and disseminated falsehoods in a common effort to deprive the plaintiff of her job—and of her opportunity to represent her constituents. It is further asserted that they did this for no reason other than to oppress her and to cause her injury, and that their project had no legitimate purpose. If these purported facts are proven, the defendants' conduct might well be sufficiently arbitrary and outrageous, in a constitutional sense, to make out a valid substantive due process claim.

*Id.* at 93-94 (citations and internal quotation marks omitted).

At the pleading stage, Plaintiff has plausibly alleged that the Investigative Report is a detailed, comprehensive confidential document containing information provided as evidence to the VHRC in its investigation. He further alleges the VHRC Defendants maliciously disclosed the Investigative Report in an effort to gratuitously tarnish his reputation and threaten his employment without any "legitimate government purpose." *Id.* at 94. Plaintiff alleges that Mr. Christie and Ms. Yang deliberately violated state law in an effort to "shape public opinion, self-promote politically, indict VSP troopers in the court of public opinion[,] . . . [and] damag[e] their names, reputations and careers[.]" (Doc. 58-4 at 68, ¶ 152.) Finally, he has alleged that Mr. Christie's and Ms. Yang's release of the Investigative Report to Seven Days was the direct and proximate cause of his damages. Accepting Plaintiff's allegations as true, as the court must, although a close question, Plaintiff has plausibly alleged a substantive due process claim sufficient to withstand a motion to dismiss.

### F. Whether the Court Erred in Analyzing Plaintiff's Defamation and Invasion of Privacy Claims.

The VHRC Defendants argue the court erred in considering conduct by Mr.

11

Christie and Ms. Yang related to the VHRC's investigation, decision-making, or Final Determination in analyzing whether Plaintiff plausibly alleged actual malice.

"[W]hether actual malice can plausibly be inferred will depend on the facts and circumstances of each case." *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). Evidence of an ulterior motive can "bolster an inference of actual malice" and thus the relationships between the parties is a relevant consideration. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995); *see also Zeigler v. Rater*, 939 F.3d 385, 397 (1st Cir. 2019) ("Generally speaking, actual malice may be inferred from the parties' relationship and the circumstances surrounding the publication."). As a result, while Mr. Christie and Ms. Yang may be immune for their investigative and adjudicative conduct, that conduct remains relevant to whether Plaintiff has plausibly alleged actual malice. *See Biro*, 807 F.3d at 545-46 ("[D]istrict courts in and out of our Circuit have inferred actual malice at the pleading stage from allegations that referred to the nature and circumstances of the alleged defamation or previous dealings with the defendant.").

Because the VHRC Defendants' motion for reconsideration of the court's analysis of Plaintiff's defamation and invasion of privacy claims is merely an attempt to relitigate an issue the court has decided, their request for reconsideration of these claims is DENIED.

### G. The VHRC Defendants' Motion for a Certificate of Appealability and Plaintiff's Motion to Certify Mr. Christie's and Ms. Yang's Appeal as Frivolous.

If the court denies their motion for reconsideration with regard to Plaintiff's § 1983 claims, the VHRC Defendants ask the court in the alternative to enter an order certifying its qualified immunity decision for interlocutory appeal. Plaintiff opposes the certification for interlocutory appeal and asks the court to instead certify the appeal as frivolous.

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S.

12

511, 530 (1985). If a district court's qualified immunity decision "turns on questions of evidence sufficiency alone (*i.e.*, which alleged facts a party may, or may not, be able to prove at trial), it is not immediately appealable." *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 712 (2d Cir. 2022).

Even where a district court finds that genuine issues of fact exist, however, "there is appellate jurisdiction over that defendant's interlocutory appeal if the defendant contests the existence of a dispute or the materiality as a matter of law, or contends that he is entitled to qualified immunity even under the plaintiff's version of the facts." *Id.* Where a defendant accepts a plaintiff's facts as alleged, the Second Circuit has recognized that "whether the plaintiff sufficiently pleaded the violation of a constitutional right" and "whether, at the time of the alleged violation, the defendant's actions, as alleged by the plaintiff, violated clearly established law" are "'strictly legal' questions reviewable on interlocutory appeal[.]" *Id.*

Accepting the facts as alleged by Plaintiff as true, the VHRC Defendants acknowledge for purposes of their appeal that the release of the Investigative Report violated Vermont law and was done maliciously to injure Plaintiff's reputation. They nonetheless contend that a question of law remains regarding whether the release of the Investigative Report violated clearly established law.[3] Under the Second Circuit's recent decision in *National Rifle Association of America v. Vullo*, the VHRC Defendants' acceptance of the facts as alleged in the SFAC removes the barrier to interlocutory appeal posed by the parties' factual disputes. 49 F.4th at 712. The court thus GRANTS the VHRC Defendants' request to pursue an interlocutory appeal.

---

[3] Under *Velez v. Levy*, the right to be free from "malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock[s] the conscience[,]" and is arguably well-established. 401 F.3d 75, 94 (2d Cir. 2005) (internal quotation marks omitted).

Because the VHRC's arguments are not frivolous, the court denies Plaintiff's request to certify them as such. Plaintiff's motion for certification of the appeal as frivolous is therefore DENIED.[4]

## CONCLUSION

For the foregoing reasons, the VHRC Defendants' motion for reconsideration is GRANTED IN PART AND DENIED IN PART (Doc. 68). Plaintiff's 42 U.S.C. § 1983 procedural due process liberty and property claims (Counts I and II) are DISMISSED WITHOUT PREJUDICE as to Mr. Christie and Ms. Yang in their individual capacities. Plaintiff's § 1983 substantive due process claim (Count III) is not dismissed. The VHRC Defendants' motion for a certificate of appealability is GRANTED. Plaintiff's motion for certification of Mr. Christie's and Ms. Yang's appeal as frivolous is DENIED (Doc. 77). SO ORDERED.

Dated at Burlington, in the District of Vermont, this 29th day of June, 2023.

Christina Reiss, District Judge
United States District Court

---

[4] Plaintiff cites several decisions from other district courts in the Second Circuit in which the court applied a "dual jurisdiction" rule to "certify as 'frivolous' an appeal from a denial of qualified immunity if the denial was based on a factual dispute." *Kistner v. City of Buffalo*, 2023 WL 21219, at *4 (W.D.N.Y. Jan. 3, 2023) (declining to apply the dual jurisdiction rule due to the Second Circuit's silence on the practice). The Second Circuit has not endorsed this practice.